UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WORKERS' COMPENSATION REINSURANCE ASSOCIATION; MINNESOTA MEDICAL FOUNDATION; THE MINNEAPOLIS FOUNDATION; ROBINS KAPLAN MILLER & CIRESI FOUNDATION FOR CHILDREN, <br><br>      Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A. and ROBERT G. SMITH, <br><br>      Defendants. | Case No. 09-CV-2291 (PJS/JSM) <br><br><br><br> ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

Michael V. Ciresi, Roberta B. Walburn, Denise S. Rahne, and Heather M. McElroy, ROBINS, KAPLAN, MILLER & CIRESI, L.L.P., for plaintiffs.

Robert R. Weinstine, Brooks F. Poley, William A. McNab, and Erin A. Oglesbay, WINTHROP & WEINSTINE, P.A.; Lawrence T. Hofmann, Richard M. Hagstrom, Michael R. Cashman, Michael E. Jacobs, Jonathan F. Mack, and Rory D. Zamansky, ZELLE HOFMANN VOELBEL & MASON LLP; and David F. Herr, MASLON EDELMAN BORMAN & BRAND, LLP, for defendants.

This matter is before the Court on plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c). For the reasons stated at length on the record at the October 5, 2009 hearing, and briefly summarized below, plaintiffs' motion is granted.

Plaintiffs are participants in a securities-lending program ("SLP") run by defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Defendant Robert Smith is the senior managing director in charge of the SLP. Under the SLP, Wells Fargo made temporary loans of plaintiffs' securities to brokers. In return, the brokers provided Wells Fargo with cash collateral, which was placed in a

trust managed by Wells Fargo. Plaintiffs allege that Smith and Wells Fargo mismanaged the trust's investments and made many misrepresentations about the type and safety of the investments. Plaintiffs bring numerous state-law claims against Wells Fargo and Smith.

Because plaintiffs and Smith are all citizens of Minnesota, complete diversity of citizenship is lacking. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806) (adopting the complete-diversity rule). In their notice of removal, though, defendants contend that the Court can disregard the claims against Smith under the doctrine of fraudulent joinder. *See Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007) (the right of an out-of-state defendant to remove a diversity suit to federal court cannot be defeated by the fraudulent joinder of a resident defendant). A defendant will be regarded as fraudulently joined only "'when there exists no reasonable basis in fact and law supporting a claim against [that] defendant[].'" *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting *Filla v. Norfolk S. Ry.*, 336 F.3d 806, 810 (8th Cir. 2003)).

Generally speaking, a notice of removal must be filed within thirty days of service of the complaint. 28 U.S.C. § 1446(b). If the case "stated by the initial pleading" is not removable, however, § 1446(b) starts the thirty-day clock when the defendant is first able to ascertain that the case is removable:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b). Here, defendants filed their notice of removal on August 31, 2009 — nearly eleven months after plaintiffs filed and served their original complaint. For defendants' notice to be timely, then, defendants must identify a "pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."

Defendants contend that plaintiffs' depositions are the "other paper" that first alerted them to the fact that plaintiffs' claims against Smith are without merit. Defendants concede that, with one exception, they were able to ascertain from the face of the complaint that none of the claims against Smith was even colorable. The exception was the "direct" breach-of-fiduciary-duty claim against Smith. Defendants point to one sentence in one paragraph of plaintiffs' 85-page, 378-paragraph complaint — a sentence that alleges (in part) that "Smith directly assumed and undertook a fiduciary duty toward Plaintiffs (and breached that duty)" — and contend that they were unable to ascertain at the time the complaint was filed that this particular allegation was meritless.

Defendants argue that Wells Fargo owes no fiduciary duty to plaintiffs. Because Wells Fargo owes no fiduciary duty to plaintiffs, defendants contend, *Smith* owes no fiduciary duty to plaintiffs based on anything he has done or said as a Wells Fargo employee. Defendants thus concede that, at the time the complaint was filed, they knew that Smith could not be held liable for breach of fiduciary duty based on acts committed and statements made in the scope of his employment. But, defendants say, it was possible that Smith had engaged in personal contacts with plaintiffs — that is, contacts that were not related to his employment with Wells Fargo — and it was possible that those personal contacts had given rise to a fiduciary duty on Smith's part. According to defendants, then, only when plaintiffs testified at their depositions that all of

Smith's contacts with them were related to his employment with Wells Fargo were defendants able to ascertain for the first time that Smith had been fraudulently joined and that the case was removable.

Defendants may or may not be correct about the substantive law governing the scope of Smith's and Wells Fargo's fiduciary duties. (The Court has its doubts.) But assuming that defendants are correct about the substantive law, defendants were able to ascertain that the breach-of-fiduciary-duty claim was meritless (on defendants' theory) at the time that defendants were served with the complaint. It is simply not true that defendants were not able to "ascertain" until the plaintiffs' depositions were taken that their breach-of-fiduciary-duty claim against Smith rested solely on actions he took in the scope of his employment with Wells Fargo.

To begin with, it is apparent from the face of plaintiffs' complaint that they grounded their allegation that "Smith directly assumed and undertook a fiduciary duty toward Plaintiffs (and breached that duty)" solely on his actions as a Wells Fargo employee. The complaint alleges:

> Smith directly assumed and undertook a fiduciary duty toward Plaintiffs (and breached that duty) *by his actions and statements detailed herein*, and Smith knew that Plaintiffs placed their trust and confidence in him by virtue of, among other things, his actions and statements and superior knowledge, and his possession and control over Plaintiffs' securities and the collateral investments in the securities lending program.

Compl. ¶ 314 (emphasis added). This paragraph makes clear that Smith's alleged fiduciary obligations arise from the "actions and statements detailed" in the complaint. All of the "actions and statements detailed" in the complaint relate to Smith's employment with Wells Fargo.

-4-

Nowhere in the complaint do plaintiffs even hint that Smith somehow had personal contacts with them, or that they were harmed by those personal contacts.[1]

It is abundantly clear, from any fair reading of the entire complaint, that plaintiffs base their allegations against Smith solely on things he did and said as an employee of Wells Fargo. If defendants are correct that, under the substantive law, such actions and statements cannot give rise to a breach-of-fiduciary-duty claim against Smith, then defendants knew at the time that the complaint was served that the breach-of-fiduciary-duty claim against Smith was not colorable.

Plaintiffs' depositions did not change the nature of their claim or provide defendants any information that they did not already know from the face of the complaint. Plaintiffs did nothing more at their depositions than confirm that they were making the allegations made in their complaint and not making allegations not made in their complaint. Specifically, plaintiffs confirmed that, just as their complaint said, they were basing their breach-of-fiduciary-duty claim against Smith on contacts that he had with them as an employee of Wells Fargo. Plaintiffs' depositions are obviously not "other paper from which it may *first* be ascertained that the case is one which is or has become removable . . . ."

This is true for an additional reason: Defendants could "ascertain" at the time that the complaint was served that the breach-of-fiduciary-duty claim was meritless (on defendants' reading of the law) because the defendants — Wells Fargo and Smith — *knew* that Smith had

---

[1]Indeed, it is difficult to imagine a plausible set of facts in which Smith would have created fiduciary obligations through personal contacts with plaintiffs. The best that defendants could do at oral argument was to come up with a hypothetical in which Smith solicited a bribe from plaintiffs to take extra care in managing their investments. Putting aside the fact that such a solicitation surely would have been mentioned in the complaint, it is not clear to the Court that, even under this hypothetical, Smith would have been acting in his personal capacity, or that his solicitation of a bribe would have created fiduciary obligations.

engaged in no contacts with plaintiffs other than as an employee of Wells Fargo.  This is not a case in which, months after a complaint was served, defendants first became aware of information that had previously been in the sole possession of plaintiff — for example, information about plaintiff's citizenship or the extent of her injuries.  Rather, at their depositions plaintiffs merely confirmed what defendants had known all along:  that all of Smith's contacts with plaintiffs had been in his capacity as a Wells Fargo employee.  Where, as here, defendants know from the outset that the case is removable based on evidence in their possession — evidence that is not in any way contradicted by the factual allegations of the complaint — defendants cannot wait until plaintiffs *confirm* that evidence before removing.  Under such circumstances, plaintiffs' depositions are obviously not "other paper from which it may *first* be ascertained that the case is one which is or has become removable . . . ."  Defendants' notice of removal is thus untimely under § 1446(b).

Even if defendants' notice of removal were timely, the Court would remand this action for lack of subject-matter jurisdiction.  "The relevant inquiry in analyzing fraudulent joinder . . . focuses only on whether a plaintiff 'might' have a 'colorable' claim under state law against a fellow resident . . . ."  *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007).  In appropriate cases, courts may take a limited look at evidence outside the pleadings in making this inquiry.  *See Masepohl v. Am. Tobacco Co.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997).  For example, a court may find fraudulent joinder when there is literally no evidence that the nondiverse defendant had anything whatsoever to do with the alleged wrongs done to the plaintiff.  *See, e.g.*, *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 183-85 (1907) (nondiverse defendant was a draftsman who essentially did clerical work and had no supervisory

responsibilities nor any responsibility for the allegedly negligent design of the factory); *TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1314-15 (M.D. Ala. 2002) (nondiverse defendant was not plaintiff's supervisor, did not "control the purse strings," did not hire or fire plaintiff, did not terminate plaintiff's contract, and had no role in plaintiff's compensation plan); *Fed. Beef Processors, Inc. v. CBS, Inc.*, 851 F. Supp. 1430, 1435-36 (D.S.D. 1994) (nondiverse defendant had no contact with CBS and was not involved in obtaining the videotape of plaintiff's meat-processing operations). Similarly, a court may take notice of incontrovertible evidence that the plaintiff's claims against the nondiverse defendant are time-barred. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319-20 (9th Cir. 1998) (fraudulent joinder found where plaintiff had already brought the same case against diverse defendant in federal court and lost on a statute-of-limitations defense that also applied to nondiverse defendant).

But defendants are asking this Court to go far beyond taking a limited look behind the pleadings. Defendants submitted a 44-page brief and hundreds of pages of exhibits and asked this Court to decide what is, in essence, an extraordinarily complex summary-judgment motion involving literally dozens of close legal and factual questions. This is far beyond the scope of the Court's review. Rather, it is enough to say that plaintiffs have offered some factual support for their claims — especially their claims based on Smith's alleged misrepresentations — and that their claims against Smith are therefore colorable.[2]

---

[2]Plaintiffs ask for attorney's fees and costs under 28 U.S.C. § 1447(c). The Court is tempted to grant the motion. The Court concludes, however, that there is enough ambiguity regarding the law of removal (especially fraudulent-joinder doctrine) and the substantive law of fiduciary obligations that it is possible that defendants acted in good faith in removing. The Court therefore declines to award fees and costs under § 1447(c).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to remand [Docket No. 15] is GRANTED.

2. This matter is hereby REMANDED to the Minnesota District Court, Second Judicial District.

Dated: October 6, 2009

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge